## STEWART *v.* GWINN.*

(Division B. Oct. 27, 1924. Suggestion of Error Overruled Nov. 24, 1924.)

[101 So. 689. No. 24371.]

ANIMALS. *Owner liable for damages by known vicious animal; evidence of animal's reputation for viciousness warrants inference of owner's knowledge.*

The owner of vicious animals, known by the owner to be such, is liable for damages done by them when the owner allows them to run at large. Evidence that the animals have such reputation in the community where the owner lives is sufficient to authorize a jury to infer that the owner knew of such vicious disposition.

*Headnote 1. Animals, 3 C. J., section 318; 2. Animals, 3 C. J., section 378.

APPEAL from circuit court of Marshall county.
HON. THOS. E. PEGRAM, Judge.

Action by H. Gwinn against E. Stewart. From a judgment for plaintiff, defendant appeals. Affirmed.

*L. A. Smith,* for appellant.

The gist of an action for damages against the owner of a domestic animal for injury to another animal on account of its vicious propensities, is the keeping of the animal with knowledge of its vicious propensities. It is not the manner of keeping the animal but keeping it with knowledge of its vicious propensities. *Hammond v. Melton,* 42 Ill. App. 186.

This is a case of first impression in Mississippi, so far as I am able to discover by a careful examination of the digests, but the above statement of the gist of the action is the one adopted in most jurisdictions and supported by the great weight of authority. This is the

holding in the federal courts of the country and in the courts of England; it is also the holding in California, Delaware, Illinois, Indiana, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, New Jersey, New York, Oklahoma, Pennsylvania, Tennessee, Texas and Wisconsin.

On proof of the vicious propensity of the animal defendant's *scienter,* and the injury—a *prima-facie* case of liability is established, and defendant is put on his defense. *Ahlstrand v. Bishop,* 88 Ill. App. 424; *Hammond v. Melton,* 42 Ill. App. 186.

Plaintiff could not recover in the absence of evidence that defendant knew of the horse's vicious and mischievous dispositon. *Kitchen v. Elliott,* 114 Ala. 290, 21 So. 965; *Hallyburton v. Burke County Fair Association,* 119 N. C. 526, 26 S. E. 14, 38 L. R. A. 156.

It may be contended that these mules were running at large, and that for this reason proof of *scienter* is not necessary. However, the answer to that is, that so were the stock of appellee, including the dead mare—that all were turned out and the pasture was not fastened where the mare is alleged to have been killed, and that appellee and appellant both indulged in this custom and both knew of it, and hence appellee was an inviter of these mules to run with his stock. Another answer is that in requiring proof of *scienter* courts distinguish between natural and abnormal acts of domestic animals. Thus it has been held that where the injury is one which could not have been anticipated, the fact that the animal may have been at the time unlawfully at large in a country highway, or a city street, or was trespassing on the land of plaintiff, does not render defendant liable without proof of *scienter.* *Kitchens v. Elliott,* 114 Ala. 290, 21 So. 965.

Everybody knows that it is not at all the ordinary habit of a horse to kick a child on a highway. Therefore, in the absence of knowledge on the part of the owner of

the vicious nature of the animal, he would not be liable for the sudden act of a fierce and violent nature contrary to its usual habits. *Cox* v. *Burbidge,* 13 C. B. (N. S.) 430, 106 E. C. L. 430, 143 Reprint 171; *Harvey* v. *Buchanan,* 121 Ga. 384-385, 49 S. E. 381; *Meegan* v. *McKay,* 1 Okla. 59-65, 30 Pac. 232.

An inconsistent compromise verdict will not be permitted to stand. *Adams* v. *Yazoo, etc., R. Co.,* 77 Miss. 194, 24 So. 200, 60 L. R. A. 33n.

*Hindman Doxey,* for appellee.

It is true, as counsel recites in his brief, this seems to be a case of first impression in Mississippi, yet there are many authorities from other states which will amply provide us with a criterion and guide in reaching the correct decision in the case at bar.

It is not necessary to establish vicious propensity, but all that is necessary to establish is mischievous propensity, which has been defined as: "A propensity from which injury is the natural result and may be manifested otherwise than in anger." *Evans* v. *McDermott,* 49 N. J. 163; 60 Am. Rep. 602; 1 R. C. L. 1091; *Hathaway* v. *Tinkham,* 148 Mass. 85, 19 N. E. 18; *Crawley* v. *Gronell,* 73 Vt. 45, 55 L. R. A. 876. "It matters little to a person whether the dog that bites him is in fun or in earnest and we apprehend that it would afford plaintiff small consolation were we to tell her that she should be resigned to her afflictions since the dog did not intend to bite her, but only to scare her." *Merritt* v. *Matchett,* 135 Mo. App. 176-182, 115 S. W. 1066.

As to the "*scienter*" of the defendant, we do not subscribe to the position taken by the appellant for "the owner of a domestic animal may even be charged with notice of its viciousness through his neglect to take notice of its propensity to commit the class of injuries com-

plained of." 1 R. C. L. 1091. "The *scienter* necessary to support an action for the vicious act of an animal may be imputed to the owner from the knowledge of his wife, brother or son to whose custody the animal was committed." *Muller* v. *McKisson*, 73 N. Y. 195; *Boler* v. *Sorgenfrei*, 86 N. Y. S. 180; *Ayres* v. *McCoughtry*, 117 Pac. 1088; 36 L. R. A. (N. S.) 865; *Holm* v. *Madison*, 118 Pac. 755.

*L. A. Smith,* in reply, for appellant.

In this case, the vast overwhelming—I use those words deliberately—weight of authority is that there must be proof of viciousness on the part of a domestic animal and proof of the knowledge of this viciousness on the part of the owner before liability attaches. I gave the leading cases in my main brief, and a list of the states, including England and the federal courts, where this doctrine has been adopted. A reference to the cases and to the decisions of those states will bear me out. Counsel for appellee does not attempt to take issue with me on this declaration in my brief, and if his examination of the authorities would have justified, it must be conceded that an able and energetic counsel, as he is, would have done so. Therefore, he is asking this court to go contrary to the common law, the almost universally accepted doctrine of law in this class of cases.

Appellee gives some authorities purporting to support the doctrine that notice to the son is notice to the father, but the extract quoted by him says this would be imputed from knowledge of the wife or son to whose custody the animal was committed. There is no proof in this record that these mules were committed to this son. This son was twenty-two years old, a grown man, emancipated from his father and doubtless with an establishment of his own, and never had the custody of these mules. So by his own authority, he fails there, also.

This is an important question in an agricultural state and to go against the great weight of authority on that issue would invite disaster to landlords and stock owners, and lay the way open for fraud and blackmail, and I am sure that this great court will adjudicate the issue correctly. I want to apologize for the length of this reply brief, and trust that my interest and sincerity will secure my pardon.

ETHRIDGE, J., delivered the opinion of the court.

The appellee sued the appellant in the justice of the peace court for one hundred and sixty-five dollars damages, resulting from the killing of a mare belonging to the plaintiff by two mules belonging to the defendant. There was a judgment in the justice court in favor of the plaintiff for one hundred dollars, from which an appeal was taken to the circuit court, where a new trial was had resulting in a verdict for seventy-five dollars for the plaintiff, from which judgment this appeal is prosecuted.

The proof for the plaintiff was that the mules attacked the mare, bit and kicked her, got her down, and were beaten off by the plaintiff, but from the injuries so inflicted the mare died in about two days. These facts were testified to by the plaintiff, his wife and son. Another witness was introduced, who testified that on a former occasion the mules attacked another horse belonging to the defendant, and that he drove the mules away from such horse and told the son of the defendant, who was about twenty-two years of age, but who lived with his father, to tell his father that he had better separate the mules from the other stock; that they were dangerous. Another witness testified that on a former occasion the mules attacked another horse belonging to a third party, and testified that he knew the reputation of the mules as to viciousness in the community, and that they were known as vicious mules. There was proof offered of a subsequent attack, but that was ruled out.

It is insisted by the appellant that the proof was insufficient to show liability, because it does not show that the defendant had knowledge that the mules were vicious, and that he would not be liable, unless he had knowledge of their vicious character. It appears that at the season that the injury was inflicted the stock in the community were all running at large, by virtue of the practice in that community of permitting stock to run at large after crops had been harvested. The killing of the mare occurred in the pasture of the defendant.

The question presented for decision, in our view of the case, is: Will the evidence of the common community reputation of the character of the mules be sufficient evidence to bring knowledge to the plaintiff of their vicious character? It may be conceded that the son did not disclose the information or message communicated to him by the witness as to the act of the mules on a former occasion, but we think that, where mules are so notoriously vicious as to acquire a reputation in the community as dangerous and vicious mules, the jury may infer that the owner had knowledge of their character and disposition.

Treating the facts testified to by the plaintiff's witness as being established by the verdict of the jury, we think the verdict and judgment must be upheld.

*Affirmed.*